**SELEY BARGES, INC., et al.,**
**Plaintiffs,**

v.

**The TUG EL LEON GRANDE and the TUG EL POTRO GRANDE, their engines, furniture, apparel, tackle, etc. and Twenty Grand Offshore, Inc., Defendants.**

**Civ. A. No. 73–122.**

United States District Court,
E. D. Louisiana.

May 28, 1974.

George A. Frilot, III, New Orleans, La., for plaintiffs.

Theodore G. Dimitry, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

In Bisso v. Inland Waterways Corporation, 1953, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, the Supreme Court held that a towboat may not validly contract with its tow to relieve the tower from all liability for negligence. The major issue in this case concerns the validity of a contract between towboat and tow whereby (1) the tow was required to carry insurance against loss, whether by virtue of the tower's negligence or otherwise and (2) the tower's liability was limited to $1,000 for each loss occasioned by its fault.

## I. The Hull Damage Agreement

█ Twenty Grand, owner of the seagoing tug, EL LEON GRANDE, agreed to perform towage of barges owned by Nilo and Seley. Their contract incorporated by reference a written agreement previously made by Nilo with another tug owner. It required Twenty Grand to insure the tug's hull and machinery, to provide coverage against tower's and collision liability and for protection and indemnity. Twenty Grand also agreed to hold Nilo harmless for damage to the tug and from liability to third persons or to the crew, and to obtain waiver of subrogation of claims against the tug from Twenty Grand's underwriters.

The contract required Nilo to provide hull and P and I insurance on the barges, and to obtain waiver of subrogation from the barge underwriters. It also provided that Nilo *"will not hold tug responsible for damage thereto, except for the first One Thousand and No/100 ($1,000.00) Dollars in each accident* occurring through the fault or neglect of" Twenty Grand. (Emphasis provided.)

Nilo's two undertakings are distinct. The barge owner has an affirmative obligation to provide insurance that will afford protection against both damage to the towage and third party claims. It also releases the tug from liability for damage to the tow for all sums in excess of $1,000.

No matter what effect *Bisso* has on this contract, Twenty Grand will clearly be liable for at least $1,000 damage in each accident, since the contract neither shifts the risk of the first $1,000 loss to Nilo nor requires Nilo to insure against it. In addition, Nilo's underwriter has waived subrogation with respect to the portion of the loss it has paid—everything over $5,000 in each accident. Thus the court's interpretation of the contract's exculpatory and insurance clauses will affect only $8,000 of the hull and machinery losses.

If the clause limiting the tug's liability for each accident to $1,000 can withstand the public policy rule of Bisso v. Inland Waterways Corporation, supra, then of course the tow cannot recover the uninsured $8,000 of loss. *Bisso's* prophylactic rule against contracts relieving the tower from liability for its own fault was based on "two main reasons . . . (1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have the power to drive hard bargains." 349 U.S. at 90, 91, 75 S.Ct. at 633. Twenty Grand argues that the reasons for the *Bisso* rule do not obtain here, and that, the reasons having failed, the rule is inapplicable. Twenty Grand

also urges that *Bisso* does not apply because the contract there released the towboat from *all* liability for negligent towage while here the towboat remained responsible for $1,000 per accident, and because here the insurers participated in the arrangement.

The tug can find some support for the effort to work a route around the *Bisso* reef in what was said in Fluor Western, Inc. v. G & H Offshore Drilling Co., 5 Cir. 1972, 447 F.2d 35:

> It appears that the overriding consideration in *Bisso* was the supposed inequality of the bargaining position of the tug industry and those in need of its services. The other reason stated in *Bisso* for the rule there announced—to discourage negligence by making wrongdoers pay damages—was, I believe, of limited importance and merely served to support the decision, for, in absence of an unconscionable disparity in bargaining positions, contracting parties should be free to distribute liabilities and costs as they wish. 447 F.2d at 38.

Neither here nor in *Bisso*—nor, for aught the opinion shows, in *Fluor*—was any effort made to prove on the record either the supposed inequality of bargaining strength, or the effect of liability for negligence as a deterrent to socially reprehensible conduct. The assumptions on which each of *Bisso's* rationalizations rests is at least debatable. See, e. g., Bisso v. Inland Waterways Corp., 1953, 349 U.S. 85, 98, 75 S.Ct. 629, 636, 99 L.Ed. 911 (Frankfurter, J., dissenting); Offshore Company v. G & H Offshore Towing Co., S.D.Tex.1966, 262 F.Supp. 282, 288. Cf. Gilmore and Black, The Law of Admiralty, 1957, 426–29. But it may be that available evidence does not yet permit proof or disproof of *Bisso's* theses. At any rate, the only evidence offered here is that the contract was freely negotiated by parties in allegedly equal bargaining positions, that Nilo sought out Twenty Grand's services and that the deductible clause, like the rest of the contract, was adopted wholesale from another Nilo contract at Nilo's suggestion.

If *Bisso* stood alone, a decision reached almost 20 years ago, where insurance was not involved, Twenty Grand's arguments might well carry the day. But in 1963 the Supreme Court summarily reversed the Fifth Circuit Court of Appeals, in Dixilyn Drilling Corp. v. Crescent Towing and Salvage Company, 1963, 372 U.S. 697, 83 S.Ct. 967, 10 L.Ed.2d 78, where similar arguments were urged. The per curiam opinion merely stated that the Circuit Court's holding was "squarely in conflict with our holding in" *Bisso*. 372 U.S. at 698, 83 S.Ct. at 968. The opinion of the Circuit Court, reported at 303 F.2d 237, reflects the equal bargaining position of the parties: the contract first proposed contained a tower's release clause; the barge's underwriters objected to it; and the clause was altered to provide instead that the barge released the tug "from any liability for account of your underwriters and that any damage claims urged by third parties as well as any claim which may be urged by virtue of damage to the drilling rig in the course of the towage shall be for your account and account of your underwriters." 303 F.2d at 245. In addition, the contract, as interpreted by the Fifth Circuit, required the barge to carry liability insurance protecting the tug against claims by third parties. The tow carried such insurance, but it failed to extend the coverage to include claims against the tug.

The parties had in fact bargained over who should bear the expense of insurance. If the towboat "had assumed that expense, it would have been reflected in its charge for towage." 303 F.2d at 244. The result of the bargaining was that the towboat charged only $35.00 per hour instead of the higher rate it would have required had it been obliged to carry the insurance. The undertaking with respect to insurance against third party claims was expressly made "part of

the consideration for our undertaking the towage," 303 F.2d at 244–45, and it was acknowledged that, "in consideration of including this clause lower rates prevail." 303 F.2d at 245, note 7.

The *Dixilyn* contract thus shared with the contract here at issue two features that might make *Bisso* inapplicable to the exculpatory clauses embodied in them: there was no evidence to show that the contract was not freely negotiated, and the exculpatory clause was part of an agreement that also allocated the cost of liability insurance. The Supreme Court, however, disdained these arguments when they were made in *Dixilyn;* in a brief per curiam opinion, it said simply that "the Court of Appeals' holding is squarely in conflict with our holding in Bisso . . . ." 83 S.Ct. 967, 968 (1963). This concludes the matter so far as a district court is concerned.

Nor does Fluor Western, Inc. v. G & H Offshore Towing Co., *supra,* permit departure from the *Bisso-Dixilyn* rule. Fluor involved a towage contract containing only an agreement by a cargo owner to provide insurance, without any exculpatory clause. The court distinguished *Bisso,* saying,

> Unlike the situation in *Bisso,* the plaintiff did not waive its right to proceed against any party responsible for the cargo loss. Although the cargo owner, pursuant to the contract, procured insurance fully covering the cargo being shipped, and presumably was reimbursed by insurance proceeds for the loss incurred, it nevertheless had the right to proceed against the barge, tug and their owner, charterers and operators if the insurance underwriters had, for whatever reason, failed to pay. With respect to the rights of the cargo owner, the carriage contract did not exculpate these potential defendants, protect them from suit by the cargo owner, or fix their respective liabilities . . . . 447 F.2d at 39.

But we cannot distinguish Nilo's obligation from the *Bisso* clause for, unlike the *Fluor Western* contract, the tug's responsibility is limited to $1,000 no matter what happens.

Thus, unless the tug's agreement that the first $1,000 of liability will not shift differentiates the exculpatory clause from the one considered in *Bisso,* as interpreted in this series of cases, we must continue to follow its lead at least as to the invalidity of that part of the contract. The provision for a deductible of $1,000 appears to be a mere token insufficient to change the result; virtually all liability for negligence has been shifted from tug to tow, in violation of *Bisso's* rule. If potential liability for damages discourages negligence, exposure to a risk of loss of $1,000 is not enough deterrent.

After twenty years of this pilpulistic searching of contract clauses, perhaps it is time to re-evaluate the *Bisso* rule *in toto* in light of economic reality. See Harlan, J., concurring in Dixilyn Drilling Corporation v. Crescent Towing and Salvage Company, *supra,* 83 S.Ct. at 968. The Fifth Circuit's decision in Twenty Grand Offshore v. West India Carriers, 1974, 492 F.2d 679, discussed in detail below, may well herald such a re-examination in this Circuit. The recency of the decision in *West India Carriers* warns that this is neither the time nor the court to undertake that function. Nor have the parties made any factual record sufficient to undermine *Bisso's* premises. Under *Bisso's* public policy rule, then, Nilo's undertaking to hold Twenty Grand liable for no more than $1,000 damage in each accident cannot be enforced.

But Nilo also undertook to procure hull and machinery insurance on its barges, and to procure a waiver of subrogation in favor of Twenty Grand. It did carry such insurance, and the insurer has in fact waived subrogation against Twenty Grand; but the insurance does not cover the losses at issue

here because it had a $5,000 deductible. If by carrying insurance with such a high deductible Nilo breached its agreement, and if that agreement is enforceable under *Bisso*, then Nilo's breach would bar its recovery.

Hull insurance is customarily carried with some deductible. That, plus the manner in which the contract is assembled, indicate that some deductible was contemplated here. It appears to be a fair conclusion from the evidence that the parties envisioned a policy with a deductible of $1,000. Hence, the policy with $5,000 deductible did not comply with the tow's undertaking with respect to providing insurance. If that part of the agreement is enforceable under *Bisso*, Nilo must bear $8,000 of its own loss.

In Twenty Grand Offshore v. West India Carriers, *supra*, the barge owner had agreed to obtain hull and machinery and P and I insurance, naming the tug owner as co-insured, with waiver of subrogation against the tug. The tug owner had taken this into account in fixing the price for the towage; had the barge owner not undertaken this obligation, the towing rate would have been higher. The barge owner, however, failed to fulfill the contract; it took out insurance, but it did not name the tug as coinsured, nor did it obtain a waiver of subrogation against the tug. When the barge was damaged, its insurer paid the loss and sued the tug, contending that the barge owner's agreement to provide insurance was invalid under *Bisso*. The court's resume of the facts and issues was:

> Here there was a fair, arm's length negotiation culminating in a towing agreement which neither by indirection nor otherwise relieves the tug owner or the towboat of its liability to the barge owner as the result of the towboat's negligence. The barge owner could have sued the tug owner if the insurance underwriters had, for whatever reason, failed to pay. Indeed, it is admitted that the tug own-

er is liable for damages sustained as the result of loss of use of the barge, as well as any other losses not covered under the policy.

> Under the circumstances of this case we must determine if the *Bisso* doctrine is so encompassing that in instances of fair dealing, with no anti-competitive forces at work, the parties to a towing contract cannot agree to include an insurance clause and thereby reduce the towing rate while not affecting the rights of the tug and barge *inter se,* or eliminate the clause and accomplish the towing at a higher rate. We are of the view that *Bisso* contemplated no such expansive interpretation. 492 F.2d at 683.

The court upheld the validity of the insurance provision clause, saying:

> We conclude that the provision in the towing agreement requiring each party to fully insure its vessel, to effect a waiver of subrogation, and to name the other party as an additional insured is not an exculpatory clause of the type invalidated in Bisso and Dixilyn. 492 F.2d at 685.

In his concurring opinion, Judge Godbold observed:

In *Crescent Towing* the barge agreed to indemnify the tower against the tower's own negligence and coupled that agreement with a commitment to procure insurance assuring the barge's ability to do so. In the instant case the barge agreed to procure insurance naming the tower as an assured and thereby to provide a third party, the insurer, who would protect the tower from the consequences of its own negligence. The difference between the two cases may initially appear slight, but it is functionally important.

In agreements of the *Crescent Towing* type, where the barge acts as the indemnitor and procures insurance primarily to protect itself, it is possible that the barge's agreement

to indemnify may be more inclusive than the insurance coverage which the barge agrees to procure and that, consequently, the barge will be liable for damages in excess of the insurance coverage or even for the entire amount if the insurer is defunct or will not pay. The risk that barge owners might accept *Crescent Towing*-type clauses in the erroneous belief that they are accepting only the responsibility for procuring insurance may perhaps justify applying *Bisso* to void such agreements. But in the present agreement this risk is absent, because the responsibility for any liability beyond the insurance which West India Carriers contracted to procure remains on Twenty Grand, the tower. Thus to the extent that one of the *Bisso* rule's functions is to protect the barge owner, the rule plays a part in *Crescent Towing* which it cannot play here. 492 F.2d at 686.

Thus, an agreement by a tow to provide insurance against damage to its own hull and machinery, and to waive subrogation against the tug, does not violate *Bisso's* public policy rule as interpreted by the Fifth Circuit in *West India Carriers*.

The contract at issue here contained both an exculpatory clause and an agreement to insure. There is some indication in *Dixilyn* that the first clause's invalidity under *Bisso* may taint and make unenforceable the second clause, since the Fifth Circuit read the *Dixilyn* contract to include both types of agreement and the Supreme Court reversed their decision *in toto*. But the Supreme Court never really discussed any issue but the exculpatory clause. On remand, the Fifth Circuit considered the case twice again, at 324 F.2d 272 (1963), and 329 F.2d 754 (1964). Since it ultimately concluded that the tug was not negligent, it never squarely faced the issue of whether or not the agreement to insure was enforceable. Moreover,

the contract in *Twenty Grand* contained an exculpatory clause; the Fifth Circuit panel set it out in a footnote, with the comment that the court and the parties agreed that it was unenforceable and not relevant to the issue on appeal. 492 F.2d at 681, fn. 2.

The court is thus free—indeed, bound —to follow the Fifth Circuit's lead in *West India Carriers* by enforcing Nilo's agreement to procure insurance against hull and machinery damage with a $1,000 deductible. Even though the exculpatory clause is invalid under *Bisso*, Nilo breached its agreement to insure, and it cannot recover damages it would not have suffered but for the breach.

## II. The Cargo Damage Agreement

■ *Bisso*, when read with the Fifth Circuit's decision in *West India Carriers*, also prevents enforcement of the contract's exculpatory provisions with respect to cargo damage. The agreement provided that Nilo *"shall* keep in force full hull . . . insurance on barges and, if desired by [*Nilo*] on cargo to be towed *and will not hold tug responsible for damage thereto,* except for the first One Thousand ($1,000) Dollars in each accident . . . . Further Owner agrees to procure waiver of subrogation *from barge underwriters."* (Emphasis supplied.)

The contract thus attempts to shift the risk of damage to cargo greater than $1,000 to Nilo, just as it attempts to do with regard to hull damage. The Fifth Circuit decision in *West India Carriers* indicated that the *Bisso* public policy rule should apply in the same way to both hull and cargo insurance. In discussing their earlier decision in *Fluor Western,* the court said:

We can discern no basic difference between *Fluor Western* and this case. The fact that it involved cargo insurance and cargo damage rather than

barge insurance and barge damage is a distinction without a difference. *Fluor Western,* as does the instant case, involved a towing agreement, and simply because cargo laden aboard the tow was damaged rather than the tow itself can conceptually make no difference. 492 F.2d at 685.

Because it shifts the risk of loss due to negligence from tug to tow, this clause dealing with cargo damage, like the hull damage clause, cannot be enforced under *Bisso.*

The parties' agreement with respect to cargo damage, moreover, did not include an insurance undertaking by Nilo. As the court reads the contract, Nilo was not obligated to insure against damage to cargo, nor, if it did insure, to procure a waiver of subrogation in favor of Twenty Grand; the contract clearly distinguishes between barge and cargo insurance, and it requires a waiver of subrogation only as to the former. Insurance on cargo is not required by the cargo damage arrangement, and with respect to cargo damage the contract attempts to do precisely what *Bisso* prohibits. Twenty Grand must bear the responsibility for the damage to cargo caused by its negligence.

Hence there will be judgment in favor of plaintiffs and against defendants for:

| | |
|---|---|
| Amount Twenty Grand agreed to pay on hull losses | $ 2,000 |
| Deductibles on cargo | 2,000 |
| Subrogation on cargo | 32,897.62 |

Twenty Grand has never disputed its liability for $2,000 for the hull damage, and interest on this sum will run from the date of judgment. Interest will be awarded on all but hull damages of $2,000 from the date of the damage, January 16, 1971. American Zinc Co. v. Foster, 5 Cir. 1971, 441 F.2d 1100.